FILED
9/19/2011
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAISHA IMANI HAMILTON, | ) | SMM |
| | ) | |
| Plaintiff, | ) | |
| V. | ) | CASE NUMBER: |
| | ) | |
| CITY OF CHICAGO, MAYOR RAHM EMANUEL, CHICAGO POLICE DEPT, GARRY McCARTHY, MARIKAY HAGERTTY, OLIVIA MEDINA, CITY OF CHICAGO CORPORATION COUNSEL –STEVE PATTON, COUNTY OF COOK, PRESIDENT TONI PRECKWINKLE, COOK COUNTY SHERIFF, COOK COUNTY DEPT OF CORRECTIONS –EXECUTIVE DIRECTOR, ILLINOIS STATE POLICE –DIRECTOR HIRAM GRAU, MEDICAID FRAUD CONTROL UNIT, ELGIN MENTAL HEALTH CENTER, and JEFF PHARIS –FORENSIC PROGRAM DIRECTOR, in their official capacities; | ) ) ) ) ) ) ) ) ) ) ) ) | 11-cv-06515<br>Judge Ronald A. Guzman<br>Magistrate Judge Maria Valdez<br><br>JUDGE: |
| RICHARD M. DALEY, TERRY HILLARD, PHILIP J. CLINE, JODY WEIS, JONATHAN BOBB, T. NYHAN, PAUL HAGAN, MARA GEORGES, BRIAN CROWE, TOM DART, MICHAEL SHEAHAN, Mr. LAYER, CHRISTOPHER RAGO, THEODORE STAJURA, KELLY BARTA, MS. MILTON, Ms. EDWARDS, F. ELIZABETH LEPIC, Mr. FOTOPOLOUS, Mr. SYEMENSKI, SAM NOLEN, CLEO JONES, WILLIAM RIEBEL, STEVEN BRADLEY, PETER LOURGOS, MATTHEW MARKOS, CLERK OF THE CIRCUIT COURT –DOROTHY BROWN, Ms. BOHANAN-SILMAN, ZORITA STANLEY, and AS YET UNIDENTIFIED Chicago Police Officers, Cook County Sheriff's Police Officers, Illinois State Police Officers, Attorney General Investigators, Medicaid Fraud Control Unit Investigators, Chicago Corporation Counsel Investigators, Inspector General Investigators, Cook County DOC officers, Cook County Court Clerks, and Cook County Probation Officers, in their individual as well as their official capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | MAGISTRATE:<br><br><br><br><br><br>DATE FILED:<br><br><br><br><br><br>JURY DEMAND |
| Defendants. | ) | |

**COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS**

1

## JURISDICTION

1. Jurisdiction of the Court is invoked pursuant to the Civil Rights Act, 42 U.S.C § 1981 et seq.: the Judicial Code, 28 U.S.C. §§ 1331, 1343, and 1391, the Constitution of the United States; and pendent and supplementary jurisdiction pursuant to 28 U.S.C. § 1367.

## PARTIES

2. Plaintiff, Maisha Imani Hamilton, is a resident of Cook County, Illinois.

3. Defendant City of Chicago is a municipal corporation, duly incorporated under the laws of the State of Illinois, and Rahm Emanuel is the current Mayor of Chicago.

4. Defendant Chicago Police Dept is a unit of Chicago city government, and Garry McCarthy is the current Superintendent of Police. Defendants MariKay Hagertty and Olivia Medina, during the cause of this action, were employed by the Chicago Police Dept.

5. Defendant City of Chicago Corporation, Counsel is a unit of Chicago city government, and Steve Patton is the current chief Corporation Counsel.

6. Defendant County of Cook is a municipal corporation, duly incorporated under the laws of the State of Illinois, and Toni Preckwinkle is President of the Board of Commissioners.

7. Defendant Cook County Sheriff is a unit of Cook County government, and Thomas Dart is the Sheriff.

8. Defendant Cook County Department of Corrections is a unit of Cook County government, and Thomas Dart is the Sheriff in charge of CCDOC.

9. Defendant Cook County Dept of Corrections is a unit of Cook County government, and is headed by an Executive Director.

10. Defendant Illinois State Police is a corporation, duly incorporated under the laws of the State of Illinois, and Hiram Grau is the Director.

11. Defendant Medicaid Fraud Control Unit is a unit within the Dept of Illinois State Police.

12. Elgin Mental Health Center is a unit of State of Illinois government.

13. Jeff Pharis is Director of the Forensic Program at Elgin Mental Health Center and is an employee of the State of Illinois.

14. Richard M. Daley is a resident of the City of Chicago. He served as Mayor of Chicago during the cause of this action and he appointed and supervised the Superintendents of Police and his Corporation Counsel.

15. Terry Hilliard, Philip Cline, and Jody Weis are residents of the County of Cook, and served as Superintendents of the Chicago Police Dept during the cause of this action.

16. Jonathan Bobb maintains an office in the City of Chicago. He consulted with and trained Chicago Police Dept personnel in regards to investigations of financial crimes during the cause of this action.

17. T. Nyhan, as well as one or more yet-to-be identified police personnel, was employed by the Chicago Police Dept during the cause of this action.

18. Paul Hagan was a resident of the City of Chicago and a retired Chicago Police detective during the cause of this action.

19. Mara Georges and Brian Crowe each maintains an office in the City of Chicago, served successively as Mayor Daley's chief Corporation Counsel during the cause of this action, and supervised yet-to-be identified investigators who worked in their office.

20. Thomas Dart and Michael Sheahan are residents of Cook County, served successively as Cook County Sheriff, and supervised Sheriff's police officers and CCDOC correctional officers.

21. Investigator Layer, Officer Christopher Rago (star 665), Theodore Stajura (star 27), and Kelly Barton (star 11235), as well as one or more yet-to-be identified Sheriff's police personnel, were employed by the Cook County Sheriff's Police Dept during the cause of this action.

22. Sergeants Milton and Edwards, as well as two or more yet-to-be identified correctional officers, were employed by Cook County DOC during the cause of this action.

23. Francis Elizabeth Lepic was employed initially as an investigator and subsequently as an Assistant Attorney General during the cause of this action.

24. Investigators Fotopolous and Syemenski, as well as two or more yet-to-be identified investigators, were employed by the Office of the Illinois Attorney General.

25. Sam Nolen was employed as the Director of the Illinois State Police Dept during the cause of this action, and he appointed and directly supervised the Director of the Medicaid Fraud Control Unit and indirectly William Riebel and other yet-to-be identified MFCU investigators, high-ranking police personnel and indirectly Sergeant Cleo Jones and other yet-to-be identified State police officers, and the Bureau of Identification.

26. Cleo Jones was employed by Illinois State Police during the cause of this action.

27. Investigator William Riebel was employed by Illinois State Police Medicaid Fraud Control Unit during the cause of this action.

28. Steven Bradley and other yet-to-be identified investigators were employed by the Illinois Dept of Public Aid Office of Inspector General during the cause of this action.

29. Matthew Markos, M.D., and Peter Lourgos, M.D, J.D., were employed by the Circuit Court of Cook County Forensic Clinical Services Unit during the cause of this action.

30. Dorothy Brown was Clerk of the Circuit Court of Cook County during the cause of this action. She supervised yet-to-be identified assistant clerks who acted and/or failed to act during the cause of this action.

31. Zorita Stanley, Ms. Bohanan-Silman, and other yet-to-be identified officers were employed by Cook County Adult Probation Dept during the cause of this action.

4

## FACTS OF THE CASE

32. From 1975 through 1997 (23 years), Hamilton and corporations that she established treated Medicaid-funded clients, billed Illinois Dept of Public Aid ("IDPA") Medicaid through the appropriate intermediary without a single problem, and lawfully received payments from IDPA Medicaid pursuant to professional and corporate licenses, certifications, and enrollments.

33. From January 1998 through December 1999 (the period of time covered by the vendor fraud indictment), the licensed and certified community mental health clinic and substance abuse treatment facility, Hamilton Healthcare, Ltd. ("HWH"), retained a separate and independent corporation, Data Medical Works, to perform medical billing functions for HWH. The period of time during which Data Medical Works performed billing services became the cause of an indictment for Medicaid vendor fraud against Hamilton, who did not submit a single bill to IDPA Medicaid, and not against Hamilton Healthcare Ltd, a corporation that billed IDPA Medicaid pursuant to licenses, certifications, and enrollments. HWH submitted bills for mental health and substance abuse treatment services in its own corporate name and did not submit any bills for psychiatric service or for any other type of service in the name of the HWH Medical Director, Dr. Myrtle Mason.

34. In August 1998, Hamilton became treating psychologist and expert witness in E.H. v. City of Chicago and Chicago Police Dept. In the course of treating E.H. and his family from August 1998 to October 2003, Hamilton learned that E.H. was tortured during his detention at a Chicago Police lock-up, and that E.H., his family, his neighbors, and Hamilton were subjected to constant harassment, including threat of arrest and intense surveillance, by Chicago Police Dept.

35. In early 1999, E.H. and his family filed a $100 million lawsuit against City of Chicago and Chicago Police Dept, and retained Hamilton to serve as their treating psychologist and expert witness. Hamilton agreed to keep track of her billing and agreed to wait to be paid until

5

after the $100 million lawsuit settled. Even though E.H. and certain of his family members were IDPA Medicaid recipients, Hamilton did not bill IDPA for any services that she provided in her role as treating psychologist and expert witness. E.H. and some of his family members were treated by HWH staff (other than Hamilton) for certain family problems and HWH billed IDPA Medicaid for those services.

36. In January 2000, the Chief of Staff at DCFS referred Hamilton to the IDPA Inspector General for investigation of wrongdoing pursuant to a letter of complaint that DCFS received from a disgruntled former HWH employee. The IG assigned the investigation to Steven Bradley.

37. In February 2000, Dr. Mason called Hamilton and stated that IDPA Office of Inspector General was auditing IDPA Medicaid billing for HWH clients under Dr. Mason's license, certification, and enrollment in IDPA Medicaid. Hamilton requested Dr. Myrtle Mason to participate in a quality assurance review of patient medical charts before turning them over to IDPA Medicaid, and Dr. Mason refused. Hamilton contacted IDPA Inspector General to request an administrative review, as allowed by law, and the IG refused. Hamilton and her staff conducted a quality assurance review of all charts and corrected all noted deficiencies.

38. Beginning in June 2000, Investigator William Riebel, Sergeant Cleo Jones, and a dozen or more as yet-to-be identified MFCU and Illinois State Police investigators and other personnel interviewed HWH staff, Data Medical Works, Dr. Mason, and clients, including E.H. family members. Riebel told E.H. family members that they were going to lose their $100 million lawsuit because their doctor was going to be indicted for Medicaid fraud. All police interviews were focused on gathering confidential information about E.H. and his family in regards to their $100 million lawsuit and none of their interviews focused on possible wrongdoing by Hamilton.

39. In approximately September 2000 Hamilton submitted to a handwriting exemplar at the Illinois State Police station. During this police interrogation, Hamilton was required to sign Dr.

6

Mason's name 30 times on a single sheet of paper. While these handwriting exemplars were in the care and custody of MFCU Investigator William Riebel, IL State Police Sergeant Cleo Jones, and IL AG Investigator F. Elizabeth Lepic, someone used the handwriting exemplar to forge Dr. Mason's name in Hamilton's handwriting on approximately 20 IDPA Alternate Payee Forms.

40. In approximately February 2001, HWH turned over all client records to the Medicaid Fraud Control Unit for auditing. Not a single record stated that Dr. Mason had provided a single service to a HWH client or family member or that HWH had billed IDPA Medicaid for a single service by Dr. Mason to a single HWH client, or for a single psychiatric service provided by anyone. Not a single record stated that Hamilton, the individual, was doing business as HWH, the corporation.

41. In May 2001 MFCU Investigator Riebel made a recommendation to Lepic that the IL Attorney General prosecute Hamilton in criminal court for vendor fraud in spite of the fact that HWH, and not Hamilton, was providing services and billing Medicaid, the fact that the State's Attorney has to be disqualified before the Attorney General can take exclusive control over a prosecution, the fact that the statute that was charged was no longer in effect and that the replacement statute, false statements, was a misdemeanor, the fact that Medicaid vendor fraud and false statements are both governed by administrative law and not by the criminal code, the fact that the MFCU and AG investigators forged IDPA alternate payee forms and accused Hamilton of forging them, the fact that HWH submitted billing statements to Data Medical Works that stated that HWH did mental health work and Data Medical Works submitted bills to IDPA through Blue Cross/Blue Shield that stated that Dr. Mason provided psychiatric services, and the fact that the State gave a command to the computer to change the name of Hamilton's corporation from Hamilton Wholistic Healthcare to "Hamilton-Bennett Holistic Health Care" and falsely alleged that Hamilton, a psychologist, was doing business as HWH, a corporation.

7

42. On June 18, 2002, Jonathan Bobb, a financial crimes trainer, consultant, and expert witness for the Chicago Police Dept came to Hamilton's home office under false pretexts, seized Hamilton's computer hard drive, and turned it over to the Chicago Police Dept at the direction of Chicago Corporation Counsel, Shefsky and Froelich lawyer Brian Crowe, and others defending the City of Chicago and Chicago Police Dept in the $100 million lawsuit that E.H. filed.

43. On June 19, 2002, without disqualification of the State's Attorney or court appointment as special prosecutor, Assistant Attorney General Lepic appeared before a grand jury and suborned 100% perjured testimony from her sole witness, MFCU Investigator William Riebel.

44. On June 25, 2002, Assistant Attorney General Lepic, using the title Assistant State's Attorney, filed an indictment against Hamilton in criminal court for Medicaid vendor fraud. The indictment failed to state an offense, charged a statute not in effect, charged Hamilton for acts that HWH committed lawfully, misstated the facts and the applicable laws, and was wrongly filed in criminal court instead of an administrative hearing. Count 2 disclosed the names and other identifying information about substance abuse clients in violation of federal criminal and civil laws. One version of the Indictment Return Sheet stated that Illinois State Police arrested Hamilton and a second version stated that Chicago Police Dept arrested Hamilton.

45. On July 10, 2002, Asst AG Lepic identified herself to the court reporter as an Assistant State's Attorney, stated to the judge that there had not been any arrest in the case, and instead of requesting a warrant upon indictment, Lepic requested a court order that stated, "Do not take into custody," and that the State's Attorney was to take Hamilton's fingerprints and use them to fabricate a criminal history for her. Chicago police officer T. Nyhan (star 27) took the prints on a Chicago Police Dept Fingerprint Arrest Card.

46. The State failed to ever disclose a false billing statement that Hamilton or HWH made to IDPA Medicaid. It was not until June 2003, a year after indictment, that the State issued a

subpoena to Data Medical Works to request copies of the bills that Data Medical Works forwarded to IDPA Medicaid on behalf of HWH. A month later, Data Medical Works returned HWH records, and none stated that HWH submitted billing invoices for psychiatric care or in the name of Dr. Mason. In approximately July 2004, when the state still could not produce a fraudulent invoice, Asst AG Thomas Patrick Murray made the false statement to the judge that the billing statements were like emails and that Data Medical Works had not retained them.

47. At trial, the prosecutor suborned perjury from all of their witnesses, failed to produce a shred of material evidence, and prosecuted maliciously. The jury was willfully all white. The prosecutor challenged all the prospective jurors who were African American and who had had even the slightest unpleasant experience with a police officer. The foreman of the jury was a Chicago police detective. The prosecutor gave documents to the jury that had not been admitted into evidence. The jury returned a verdict of guilty of two counts of vendor fraud and one count of theft.

48. Post-trial, Hamilton researched and found evidence that Data Medical Works, and not HWH or Hamilton altered true and accurate HWH billing invoices to say that Dr. Mason provided psychiatric services to HWH clients. Hamilton's defense attorney suborned perjury from the Blue Cross/Blue Shield witness who stated that BC/BS could not find the exculpatory documents, despite the fact that BC/BS had sent the documents to Hamilton who was sitting with the documents on her lap during the hearing. When Hamilton objected to BC/BS perjury, the Court threatened to arrest Hamilton for contempt of court.

49. Hamilton was forced to proceed at sentencing on January 25, 2005 without the assistance of counsel. She was convicted of one count of theft and the vendor fraud charges were merged and no sentence was attached to them. On January 25, 2005, before Hamilton was removed from the courtroom, the Judge gave her a copy of an order that stated $400,000 restitution and six

9

months at Cook County DOC. The next day, after sentencing and in the absence of counsel for the defense, the prosecutor unilaterally wrote an order for 4 years of drug possession probation on a conviction for theft and 600 hours of community service.

50. While Hamilton was detained at Cook County DOC, her life was threatened four times, toxins dripped from the ceiling onto her bed, and despite her broken right leg, she was assigned to the top bunk and denied a chair or any assistance for climbing to the top bunk. Hamilton lost 50 pounds in 56 days because the officers starved her by refusing to give her a tray some meals.

51. After release from CCDOC, Hamilton got an order from the Court to travel to Washington DC from November 4-18, 2005 to attend the U.S. Supreme Court. During her excused absence, the Cook County Adult Probation Officer, Zorita Stanley scheduled an appointment, and violated Hamilton's probation when she failed to appear. The Cook County Sheriff sent a warrant to the U.S. Marshal Service and the Fairfax County, VA police that stated that Hamilton was a fugitive because she had violated probation despite the fact that Hamilton was never sentenced to probation. Asst AG Ellen Mandeltort stated to the Fairfax County Police that Hamilton was wanted in Chicago for international forgeries and frauds. Consequently, Hamilton was detained for 90 days in Virginia, in Missouri for nearly six months, and at Cook County DOC for nearly 12 months.

52. On October 24, 2008, Hamilton was forced to labor in the CCDOC kitchen against her will, preparing meals for the other detainees. Officers interfered with her access to the law library and legal mail, and interfered with Hamilton preparing and taking to court legal documents that would help her Public Defender prepare a strong defense for her.

53. Plaintiff suffered the following injury as a result of defendants' conduct: (1) Loss of work and both personal and business contract opportunities. (2) Loss of income for work already completed, including $824,000 for work that Hamilton did as treating psychologist and expert

10

witness for E.H. and his family. (3) Loss of real property valued at $1.5 million in July 2005, and (4) Loss of professional license as a psychologist; (5) Alienation of the love and esteem of family, friends, colleagues, and associates.

54. Plaintiff suffered these damages as a direct and proximate result of her unlawful arrests and detentions.

## COUNT I

## 1983 CLAIM FOR UNLAWFUL SEIZURE AND DETENTION

55. Plaintiff realleges paragraphs 1 through 54.

56. As described more fully above, Defendants individually and in their official capacities, all while acting individually, jointly and in conspiracy, as well as under color of law and within the scope of their employment, caused Plaintiff to be unlawfully seized and detained multiple times between June 18, 2002 and September 17, 2011, in violation of her Constitutional rights under the Fourth Amendment.

57. As a result of this violation, Plaintiff suffered injuries, including but not limited to loss of income and emotional distress, more fully described above. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's Constitutional rights.

58. The misconduct described in this Count was undertaken pursuant to the practice and policy of the Defendants' offices as well as due to individual bias of named Defendants, namely retaliation and harassment of a witness to police misconduct, and discrimination against African-Americans and women in the manner described more fully above.

WHEREFORE, Plaintiff demands substantial actual or compensatory damages, jointly and severally, from Defendants named in this action. Additionally because these Defendants

acted maliciously, willfully, wantonly, and/or in total disregard for Plaintiff's Constitutional rights, Plaintiff demands substantial punitive damages from Defendants.

## COUNT II

### 1983 CLAIM FOR CONSPIRACY TO VIOLATE CIVIL RIGHTS UNDER COLOR OF LAW

59. Plaintiff realleges paragraphs 1 through 54.

60. The conduct and actions of Defendants individually and in their official capacities individually and as a conspiracy in arresting and detaining Plaintiff were intentional acts done jointly by defendants and unknown other persons in violation of the 4th, 5th, & 14th Amendments, Commerce clause, and Equal Protection Clause.

61. This resulted in Defendants fabricating inculpatory evidence, withholding exculpatory evidence, suborning perjury from witnesses, prosecuting maliciously, starving and torturing Hamilton during confinement, and falsely committing her to a locked facility for the criminally insane. Their conduct constituted affirmative acts of a conspiracy among themselves and with other unknown persons to selectively arrest, prosecute, and detain Plaintiff, and to interfere with her employment and contract rights under the commerce clause, and failed to recognize that probable cause was lacking to detain Plaintiff. These acts caused an unlawful detention, deprived Plaintiff of control over her real property, and caused Defendants to take actions toward pursuing a fraudulent prosecution without probable cause due to their intentional negligence, violated Plaintiff's Fifth and Fourteenth Amendment right to be free from arrests, detentions, and investigation without probable cause and First Amendment rights for redress of grievances as well as violated the commerce clause and Plaintiff's rights to equal protection under the law.

62. Prior to date of the Constitutional injuries suffered by Plaintiff in this case, it was agreed among the Defendants and other unknown persons that they would adopt a custom of

12

unlawfully arresting and detaining witnesses to police and prosecutorial misconduct and blocking testimony in court on behalf of victims of police and prosecutorial misconduct, as well as African Americans and women upon wanton disregard for the law and without serious inquiry, threaten arrest without basis, refuse to respect the Constitutional rights of African Americans and women, despite the fact that they had no constitutional or statutory authority to do so and despite the duty owed the citizens of Illinois, including Plaintiff, of a statutory duty to enforce the law in a manner honoring equal protection, the right to redress of grievances, the commerce clause, the right to be free from restraint without probable cause and the right to due process under the 5th and 14th Amendments.

63. The agreement among Defendants referenced in the preceding paragraph is the policy and practice of the Defendants in their official capacities as well as the personal policy of each named defendant and other unknown persons.

64. As a direct and proximate result of this violation, Plaintiff suffered injuries, including but not limited to emotional distress and financial loss.

65. Specifically, Plaintiff was detained, denied the services of the Defendant agencies and enforcement of Plaintiff's Constitutional rights, and arrests, prosecutions, and detentions of Plaintiff were initiated based on unlawful policies and practices of the Defendants. Therefore, Defendants were encouraged to believe they could act with a sense of impunity and without fear of any repercussions, even where they purposefully violated the rights of the citizen they were supposed to protect. In this manner, the alleged agreement proximately caused plaintiff's injuries in this case.

66. In this manner, the Defendants, acting in concert with other unknown co-conspirators have conspired by their concerted action, individually and collectively, to accomplish an

unlawful purpose by unlawful means and to actively, willfully and wantonly interfere with Plaintiff's Constitutional rights.

67. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

68. As a proximate result of the conspiracy, Plaintiff suffered financial damage, as well as severe emotional distress and anguish.

69. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's Constitutional rights.

70. The misconduct described in this Count was undertaken pursuant to the practice and policy of the Defendants, and agreement among individual defendants and other unknown persons in the manner described more fully above.

71. WHEREFORE, Plaintiff demands substantial actual or compensatory damages, jointly and severally, from Defendants named in this case. Additionally because these Defendants acted maliciously, willfully, wantonly, and/or in total disregard for Plaintiff's Constitutional rights, Plaintiff demands substantial punitive damages. The aforementioned actions of all Defendants and other unidentified persons, were the direct and proximate cause of the violation of Plaintiff's right to be free from arrest, prosecution, and detention without probable cause and Constitutional violations set forth above and of the Plaintiff's pain, suffering, severe mental anguish and distress, humiliation, loss of liberty, loss of income, defamation of character as a result of her being subjected to scorn, ridicule, and resulting disregard of colleagues, business associates, friends, and community, and medical and legal expenses.

## COUNT III

### 1981 CLAIM FOR VIOLATION OF EQUAL RIGHTS UNDER THE LAW

72. Plaintiff realleges paragraphs 1-54.

14

73. The conduct and actions of Defendants by racially discriminating against Plaintiff, an African American woman, while Defendants treated white treating psychologists and expert witnesess differently, violated Plaintiff's Constitutional and statutory right not to have the obligations of contracts impaired in a racially discriminatory fashion.

74. As a result of this 1981 violation, Plaintiff suffered injuries, including but not limited to loss of earned income and future earnings, more fully described above. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's Constitutional rights and with intentional racial discrimination in violation of 42 U.S. C. 1981.

75. The aforementioned actions of above named Defendants and other unidentified persons were the direct and proximate cause of the violation of Plaintiff's right to make and enforce contracts and to the full and equal benefit and protection of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, of Constitutional violations set forth above, and of the Plaintiff's pain, suffering, severe mental anguish and distress, humiliation, loss of liberty, and loss of income.

WHEREFORE, Plaintiff demands substantial actual or compensatory damages, jointly and severally, from the Defendants named in this Count. Additionally because these Defendants acted maliciously, willfully, wantonly, and/or in total disregard for Plaintiff's Constitutional rights, Plaintiff demands substantial punitive damages from Defendants. Plaintiff also demands costs and attorney's fees and whatever additional relief this Court deems equitable and just.

## COUNT IV

## CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL RIGHTS

76. Plaintiff realleges paragraphs 1-54.

77. The conduct and actions of Defendant officers individually and in their official capacity by tortiously interfering with Plaintiff's right to execute and enforce business and employment contracts, violated Plaintiff's Constitutional and statutory right not to have the obligations of contracts impaired.

78. As a result of this violation, Plaintiff suffered injuries, including but not limited to loss of earned income and future earnings, more fully described above. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's Constitutional rights.

79. The aforementioned actions of all Defendants and other unidentified persons were the direct and proximate cause of the violation of Plaintiff's right to make and enforce contracts and to the full and equal benefit and protection of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, of Constitutional violations set forth above, and of the Plaintiff's pain, suffering, severe mental anguish and distress, humiliation, loss of liberty, and loss of income.

WHEREFORE, Plaintiff demands substantial actual or compensatory damages, jointly and severally, from the Defendants named in this Count. Additionally because these Defendants acted maliciously, willfully, wantonly, and/or in total disregard for Plaintiff's Constitutional rights, Plaintiff demands substantial punitive damages from Defendants, including non-municipal Defendants. Plaintiff also demands costs and attorney's fees and whatever additional relief this Court deems equitable and just.

## COUNT V

### PENDANT STATE CLAIM FOR INTENTIONAL AND PER SE DEFAMATION AND NEGLIGENT DEFAMATION

80. Plaintiff realleges paragraphs 1-54.

81. The false statements and representations of Defendants to police agencies and in various courts, individually and in their official capacities about Plaintiff that they willfully, selectively and in conspiracy refused to verify this information bdfore they gave it because Plaintiff is an African American and a woman was done willfully and in conspiracy due to race, sex, and age, Defendants gave false and unverified defamatory statements about Plaintiff to police, courts, and the media about Plaintiff's conduct, behavior, professional skills, interactions with others, reputation, and collectively and individually, maliciously maligned the Plaintiff's reputation, and constituted libel and slander *per se*. Defendants knew or should have known that these statements and representations were false.

82. As a direct and proximate result of said Defendants' extreme and outrageous statements and representation, intentional and malicious statements and representations, Plaintiff suffered and continues to suffer *inter alia*, emotional distress, loss of reputation, unlawful detention, loss of income and livelihood, embarrassment, and loss of her reputation in the community, constituting intentional and negligent defamation under the laws of the State of Illinois.

WHEREFORE, Plaintiff demands substantial actual or compensatory damages, jointly and severally, from the Defendants named in this Court. Additionally, because these Defendants acted maliciously, willfully, wantonly, and/or in reckless disregard for Plaintiff's Constitutional rights to remain free from false allegations maligning her character, Plaintiff demands substantial punitive damages from the Defendants. Plaintiff also demands cost and attorneys' fees and whatever additional relief this court deems equitable and just, including the cost of restoration of Plaintiff's good name in the community.

## COUNT VI

### PENDENT STATE LAW CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

83. Plaintiff realleges paragraphs 1-54.

84. The conduct and actions as describe in this complaint of all Defendants individually and/or in their official capacities, in refusing to review and reverse their conduct, despite having knowledge concerning the facts described above, which is an act of investigatorial misconduct, in continuing an investigation for prosecution despite having evidence of Plaintiff's innocence, were extreme and outrageous, were done intentionally, willfully, wantonly, and/or knowing there was a high probability that their conduct would cause Plaintiff severe emotional distress as set forth above.

85. As a direct and proximate result of said Defendant's extreme and outrageous conduct, Plaintiff was mentally injured and thus experience severe emotional distress, constituting intentional infliction of emotional distress under the laws of the State of Illinois.

WHEREFORE, Plaintiff demands substantial actual or compensatory damages, jointly and severally from the Defendants named in this Court. Additionally, because these Defendants acted maliciously, willfully, wantonly, and/or in reckless disregard for Plaintiff's Constitutional rights, Plaintiff demands substantial punitive damages from the Defendants. Plaintiff also demands cost and attorney's fees, if any, and whatever additional relief this court deems equitable and just.

## COUNT VII

### PENDENT STATE CLAIM FOR WRONGFUL CONVEYANCE OF PROPERTY

86. Plaintiff realleges paragraphs 1-54.

87. The conduct and actions as describe in this complaint of all Defendants individually and in their official capacities was done intentionally, willfully, wantonly, and/or knowing there was a high probability that their conduct would cause Plaintiff to be unable to testify for her clients honestly in a cout of law or fulfill her contracts for income-producing work. This was a violation of state property rights laws, as well as violation of their professional duties and responsibilities.

18

88. As a direct and proximate result of said Defendant's extreme and outrageous conduct, Plaintiff was injured and unable to perform her professional duties as treating psychologist and expert witness, and has been unable to make a living since being falsely charged in 2002, and has been rendered homeles, penniless, and alone.

WHEREFORE, Plaintiff demands substantial actual or compensatory damages, jointly and severally from the Defendants named in this Court. Additionally, because these Defendants acted maliciously, willfully, wantonly, and/or in reckless disregard for Plaintiff's Constitutional rights, Plaintiff demands substantial punitive damages from the Defendants. Plaintiff also demands cost and attorney's fees, if any, and whatever additional relief this court deems equitable and just.

Respectfully submitted,

*Maisha Hamilton*
Maisha Imani Hamilton
Plaintiff Pro Se

Maisha Imani Hamilton, PhD.
8211 S. Saint Lawrence Ave.
Chicago, IL 60619
312-835-1951
maisha7@aol.com

Plaintiff demands a trial on each and every count of this Complaint.